UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 13 CR 463-1 |
| v. ) | |
| ) | Judge Thomas M. Durkin |
| STEVEN BARTLETT ) | |

**MEMORANDUM OPINION AND ORDER**

After contracting COVID-19, Defendant Steven Bartlett filed an amended motion for compassionate release under 18 U.S.C. § 3582, or, in the alternative, for a recommendation that the Bureau of Prisons ("BOP") place him on home confinement. R. 385. For the following reasons, Mr. Bartlett's motion is denied.

**Background**

Mr. Bartlett pled guilty in August 2016 to participation in an extensive mortgage fraud scheme. He was sentenced thereafter to 45 months' imprisonment—well below the applicable 70-87 month Sentencing Guidelines range—and ordered to pay over $1,890,000 in restitution. Mr. Bartlett began serving his sentence in January 2020, and the BOP calculates his release date as March 8, 2022. Mr. Bartlett is currently housed at Duluth FPC in Duluth, Minnesota. In July 2020, Mr. Bartlett moved for compassionate release under 18 U.S.C. § 3582, citing the COVID-19 pandemic and contending that he suffers from moderate-persistent asthma. The Court denied his motion, noting that Mr. Bartlett had failed to exhaust his administrative remedies, and that even if the Court could reach the merits of his

motion, it was unclear whether Mr. Bartlett could offer an "extraordinary and compelling reason" for release as 18 U.S.C § 3582 requires. R. 377. The Court noted that while records from a pre-incarceration physician visit contained an asthma diagnosis, Mr. Bartlett's Duluth FPC medical records reflected that Mr. Bartlett did not report having asthma until COVID-19, and that staff diagnosed Mr. Bartlett with allergic rhinitis and refilled his inhaler for that purpose, not because of any suspected asthma. *Id.* The Court also noted the CDC's position that a person with moderate to severe asthma only *might* be at an increased risk for severe illness in any case. *Id.*

Now, Mr. Bartlett again moves for compassionate release, indicating that he has been infected with COVID-19, reiterating his claim that he suffers from asthma, and contending that he is also obese.

## Standard

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the BOP filing a motion on the defendant's behalf. In determining whether a sentence reduction under § 3582 is appropriate, courts consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See*

*United States v. Gold*, 2020 WL 2197839, *1 (N.D. Ill. May 6, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

## Analysis

The Government concedes that Mr. Bartlett has now exhausted his administrative remedies and that the BOP has not pursued his request for early release. But the Government contends that no extraordinary and compelling reason exists to justify Mr. Bartlett's release, and that the Section 3553(a) factors counsel against it. The Court addresses the parties' arguments on each issue in turn.

***Extraordinary and compelling reasons and policy statements.*** In determining what constitutes an extraordinary and compelling reason to modify a person's sentence, courts consider the guidance contained in the U.S. Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. The Application Notes describe extraordinary and compelling reasons as including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The notes also include the following catch-all provision: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). *Id*. cmt. n.1(d). The Seventh Circuit recently held in *United States v. Gunn* that the Sentencing Commission's policy statement on what constitutes an extraordinary and compelling reason for compassionate release does not apply to prisoner-initiated motions. 980 F.3d 1178, 1180 (7th Cir. 2020). But the court also noted that "substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its

3

Application Notes provide a working definition of 'extraordinary and compelling reasons.'" *Id.* The court continued that a "judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Accordingly, the Sentencing Commission's analysis remains instructive, and guides the Court's decision here.

Mr. Bartlett argues that his weight constitutes an extraordinary and compelling reason for his release. In his opening brief, Mr. Bartlett indicates that his body mass index ("BMI") was at that time "well over 30," the threshold the CDC has determined places an individual at an increased risk for severe illness due to COVID-19. R. 385 at 1; *see also* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 5, 2020). But the Government contends in its response brief that while at one time Mr. Bartlett's BMI was 30.8, his current BMI is just 27.3. R. 390 at 11. Mr. Bartlett argues that his weight loss was due to a loss of appetite that accompanied his COVID-19 infection, but does not dispute that his current BMI is below 30. R. 392 at 4-5. Accordingly, Mr. Bartlett's BMI is not an extraordinary and compelling reason for release.

Mr. Bartlett also maintains that he suffers from asthma, while the Government continues to dispute that claim.[1] But as this Court explained in its

---

[1] Indeed, the medical records provided by the Government suggest that Mr. Bartlett may have been attempting to manipulate an examination he received to support an asthma diagnosis. *See* R. 391 at 40 (August 20, 2020 BOP clinical encounter in which the provider indicated that Mr. Bartlett's "expiratory wheezes . . . originated from his glottis not his lungs," leaving the provider to conclude that "he was trying to manipulate the exam").

4

August 2020 order denying Mr. Bartlett's initial motion for compassionate release, the CDC no longer recognizes asthma as a condition that places an individual at risk for severe illness due to COVID-19. Instead, the CDC states only that an individual with moderate-to-severe asthma *might* be at an increased risk for severe illness. *See* R. 377 at 3 (citing www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). And there is nothing in the medical records to indicate that Mr. Bartlett falls into this category.

Finally, and as noted, Mr. Bartlett posits that his COVID-19 diagnosis itself justifies his early release. But a December 17, 2020 x-ray demonstrates that as of that date, his lungs were completely clear. R. 390, Ex. A at 1. Mr. Bartlett does not contest that fact, and nor does his reply brief indicate that he suffers from any lingering symptoms or other effects of the virus. The fact that Mr. Bartlett contracted and recovered from COVID-19 cuts against granting the relief he requests. *See United States v. Gregory*, 2020 WL 3036001, at *2 (N.D. Ill. June 5, 2020) (concluding that extraordinary and compelling reasons did not exist to warrant a sentence reduction "in light of Defendant's recovery and the fact that he does not dispute that he is now asymptomatic and fever free, and does not point to any current health problems as a result of having contracted Covid-19"). Mr. Bartlett also points out that there is limited research concerning reinfection rates, and also posits that newer COVID-19 variants may be more severe. But speculation about reinfection or the possibility of contracting a COVID-19 variant cannot form the basis for relief either. *See United States v. Thompson*, 2020 WL 7771141, at *2-3 (N.D. Ill. Dec. 30, 2020) (defendant's

5

professed concerned about reinfection did not justify compassionate release); *see also United States v. Gold*, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. May 6, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence") (quoting *United States v. Allegra*, No. 15 CR 243, R. 232 at 7 (N.D. Ill. Apr. 13, 2020)). Further, as of this writing, Duluth FPC is reporting just two inmate cases and one staff case of COVID-19. *See* bop.gov/coronavirus (last visited Jan. 4, 2021). In short, there is no extraordinary and compelling reason to justify Mr. Bartlett's release.

***Section 3553(a) factors.*** Even if there were an extraordinary and compelling reason to grant Mr. Bartlett the relief he requests, the Section 3553(a) factors counsel against it. An analysis under 18 U.S.C. § 3553(a) considers the defendant's history and characteristics, the seriousness of his offense, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of the BOP's efforts to maintain the safety of inmates. *United States v. Colon*, 2020 WL 7260804, at *4 (N.D. Ill. Dec. 10, 2020).

The crime to which Mr. Bartlett plead guilty was both serious and extensive; indeed, he admitted to being an instrumental part of a sophisticated mortgage fraud scheme in a low-income, south side Chicago neighborhood. That scheme involved paying people to buy properties they were not otherwise qualified to purchase, and submitting false information to financial institutions in order to secure financing. Ultimately, the loans were defaulted upon and the properties foreclosed, resulting in boarded-up homes in a neighborhood already riddled with gangs, narcotics, and

6

poverty. The Court determined at sentencing that the scheme took place over approximately two years and involved fifteen properties, and that Mr. Bartlett is responsible for a total loss of $3,072,427, and nearly $1.9 million in restitution. In effect, and in addition to the losses Mr. Bartlett's actions caused to financial institutions, Mr. Bartlett's actions decreased property values and increased crime, negatively impacting people in the neighborhood who had already been dealt an unbearably bad hand. The seriousness of his actions cannot be overstated.

Mr. Bartlett has also served just 12 months of his 45-month sentence, a sentence that is well below the applicable 70-87 month Sentencing Guidelines range. And while the Court does not believe Mr. Bartlett will commit a similar crime in the future, a reduction of his already-low sentence would not appropriately address the Court's concerns regarding general deterrence. As the Court stated at Mr. Bartlett's sentencing, incarceration is the primary deterrent for white collar crimes like his.

Further, the low numbers of individuals infected with COVID-19 at Duluth FPC at present reflect that the BOP's efforts to contain the virus are not in vain. And while Mr. Bartlett complains about the medical care he received while infected with COVID-19, his medical records suggest that he was treated promptly and appropriately. Indeed, he was "assessed daily" by medical staff, prescribed an inhaler to help him through the disease, and by all accounts has now fully recovered. R. 391 at 15. In short, the Court remains convinced that Mr. Bartlett's sentence is appropriate, even in the face of the pandemic.

***Recommendation to the BOP.*** Finally, Mr. Bartlett asks the Court to recommend to the BOP that he be placed on home confinement in the event the Court concludes, as it has, that immediate release is not appropriate. But for the reasons set forth in the Section 3553(a) portion of the Court's analysis above, and because Mr. Bartlett has already contracted and recovered from COVID-19, the Court leaves the decision regarding home confinement to the Warden's sole discretion.

## Conclusion

Even assuming Mr. Bartlett's weight and/or alleged asthma constitute an "extraordinary and compelling" reason for relief in the context of COVID-19, the Section 3553(a) factors and the fact that Mr. Bartlett has already recovered from COVID-19 counsel against his release and any recommendation that he be placed on home confinement. Accordingly, Mr. Bartlett's amended motion for compassionate release, R. 385, is denied.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: January 6, 2021